**No. 12-16214**
_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

*Anthony Adrian, et al.,*
*Plaintiffs- Appellants,*
*v.*
*Federal National Mortgage Association, et al.,*
*Defendants-Appellees*
_____

On Appeal from the United States District Court
For the District of Arizona
D.C. No. 2:12-cv-00189-PHX-ECV
_____

**ANSWERING BRIEF OF
APPELLEES, ONEWEST BANK, F.S.B.
AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION**
_____

Bradford E. Klein, Esq.
Arizona Bar No. 027720
WRIGHT, FINLAY & ZAK, LLP
4665 MacArthur Court, Ste. 280
Newport Beach, CA 92660
Telephone: 949-477-5050
Facsimile: 949-477-9200

*Attorney for Defendants-Appellees,*
ONEWEST BANK, F.S.B. and
FEDERAL NATIONAL MORTGAGE ASSOCIATION

## CORPORATE DISCLOSURE STATEMENT
(Federal Rule of Appellate Procedure 26.1)

This form is submitted on behalf of Defendants-Appellees ONEWEST

BANK, F.S.B ("OneWest") and FEDERAL NATIONAL MORTGAGE

ASSOCIATION ("Fannie Mae"), pursuant to Federal Rule of Appellate Procedure

26.1.

Defendant-Appellee OneWest is a federally chartered savings bank, which is

privately owned, with its principal place of business in California.

Defendant-Appellee Fannie Mae is organized and existing as a congressional

and federally chartered instrumentality pursuant to 12 U.S.C. § 1723a *et seq*., and

28 U.S.C. §§ 1441 and 1446, with its principal place of business located outside

the State of Arizona.

**RESPECTFULLY SUBMITTED** this 28th day of September 2012.

**WRIGHT, FINLAY & ZAK, LLP**

By:    */s/ Bradford E. Klein, Esq.*
Bradford E. Klein, Esq.
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Telephone: 949-477-5050
Fax: 949-477-9200
Attorneys for Defendants-Appellees,
ONEWEST BANK, F.S.B and FEDERAL
NATIONAL MORTGAGE ASSOCIATION

1

# TABLE OF CONTENTS

PAGE

CORPORATE DISCLOSURE STATEMENT ............................................................ 1

JURISDICTIONAL STATEMENT ............................................................ 2

ISSUES PRESENTED ............................................................ 2

STATEMENT OF THE CASE ............................................................ 3

    1. NATURE OF THE CASE ............................................................ 3

    2. COURSE OF PROCEEDINGS AND DISPOSITION BELOW ............... 5

STATEMENT OF FACTS ............................................................ 9

SUMMARY OF ARGUMENT ............................................................ 13

ARGUMENT ............................................................ 17

    1. STANDARD OF REVIEW ............................................................ 17

        i. Appellants Are Not Entitled to Amend Pursuant to

           Fed.R.Civ.P.15(a) ............................................................ 21

    2. The Entry of Final Judgment Terminated Any Right to Amend .. 23

    3. Plaintiff-Appellants Never Moved the District Court to Amend,

       So the District Court Could Not have Abused its Discretion in

       Denying Leave to Amend ............................................................ 24

i

4.  Each of Plaintiffs-Appellants' Claims Related to the
    Foreclosure Process are statutorily barred by A.R.S. 33-811 ........ 27

5.  Plaintiffs-Appellants' Wrongful Foreclosure Cause of Action
    Fails ....................................................................................... 34

    i.   The plaintiffs-Appellants Offer No Basis for This Court
         To Recognize the Potential Claim of Wrongful Foreclosure
         In Arizona ........................................................................ 34

    ii.  The Plaintiffs-Appellants Fail to Allege they Were
         Not in Default ................................................................... 35

    iii. The Wrongful Foreclosure Claims Fails Under Other
         Ninth Circuit Jurisdiction's Law as Well ............................ 36

    iv.  The Plaintiffs-Appellants' Claims of Fraud in Connection
         With their Meritless Wrongful Foreclosure Claim also
         Fails ................................................................................... 39

6.  Plaintiffs-Appellants' Intentional Infliction of Emotional
    Distress Cause of Action Fails ..................................................... 44

7.  Plaintiffs-Appellants' Cause of Action for Fraud Fails ................. 48

8.  Plaintiffs-Appellants' Allegations Related to a Breach of the
    Implied Covenant of Good Faith and Fair Dealing Fail ................ 54

ii

9.  Plaintiffs-Appellants' Claim for Relief for Promissory Estoppel

Fails to State a Claim Upon Which Relief can be Granted ............ 56

CONCLUSION ....................................................................... 59

STATEMENT OF RELATED CASES ....................................... 61

CERTIFICATE OF COMPLIANCE ......................................... 62

CERTIFICATE OF SERVICE ................................................. 63

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdallah v. United Savings Bank,*
(1996) 43 Cal.App.4th 1101, 1109 ...........................................................37

*Alaska v. United States,*
201 F.3d 1154, 1163-1164 (9th Cir. 2000) ...............................................25

*Allen v. City of Beverly Hills,*
911 F.2d 367, 373 (9thCir. 1990) .............................................................20

*Arnolds Management Corp. v. Eischen,*
(1984) 158 Cal.App.3d 575, 578-579 ............................................... 37, 38

*Benson v. JP Morgan Chase Bank, N.A.,*
673 F.3d 207, 1217 (9th Cir. 2012) ..........................................................23

*Bilke v. State,*
206 Ariz. 462, 464-465, ¶ 11, 80 P.3d 269, 271-72 (2003)......................30

*Bonin v. Calderon,*
59 F.3d 815, 845 (9th Cir. 1995) ..............................................................20

*Brier v. N. Cal. Bowling Proprietors' Assn.,*
316 F.2d 787, 789 (9th Cir. 1963) ............................................................23

Bt Capital, LLC,
*633 Ariz. Adv. Rep. 38 (May 4, 2012) [2012 WL 1556654]*....................29

*Carvalho v. Equifax Information Services, LLC,*
629 F.3d 876, 892-893 (9th Cir.2010) ......................................................21

*Castro v. Executive Trustee Serv., LLC.,*
2009 WL 438683 (D.Ariz.2009)...............................................................49

*Cervantes v. Countrywide Home Loans, Inc.,*
656 F.3d at 1038, 1041-1043, 1046 ......................................... 34, 36, 39, 40, 47, 48

Chewning v. Palmer,
133 Ariz. 136, 138, 650 P.2d 438 (1982) ..............................................56

*Cluff v. Farmers Ins. Exchange,*
10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969) ...................................45

CNL Hotels & Resorts, Inc. v. Maricopa County,
226 Ariz. 155, 159, ¶ 15, 244 P.3d 592, 596 (App.2010).........................30

*Coleman v. Am. Home Mortg. Servicing,*
2010 U.S. Dist. LEXIS 30922, *10–11, 2010 WL 1268141 (D.Ariz.2010) ...........30

*Contempo Constr. Co. v. Mountain States,*
153 Ariz. 279, 736 P.2d 13 (1987) .................................................. 56, 58

*Cook, Perkiss & Liehe, Inc. v. No. California Collection Serv. Inc.,*
911 F.2d 242, 247 (9th Cir. 1990) ...........................................................20

*Crown Realty & Dev., Inc. v. Sandblom,*
2007 WL 177842, at *3 (D. Ariz. 2007).................................................19

*Elwood v. Drescher,*
90 Fed.Appx. 501, 505 (9th Cir. 2004)...................................................25

*Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco,*
792 F.2d 1432, 1438 (9th Cir. 1986) .......................................................20

*Foman v. Davis,*
371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).........................20

*Gardner v. Martino,*
563 F.3d 981, 990, 991 (9th Cir. 1990) .......................................... 19, 20

*Ghazali v. Moran,*
46 F.3d 52, 53 (9th Cir. 1995) ....................................................... 19, 24

v

*Herring v. Countrywide Home Loans, Inc.,*
2007 WL 2051394 at *5 (D.Ariz. July 13, 2007)....................................................34

*Hunter v. CitiMortgage, Inc.,*
2011 WL 4625973 at *3 (D. Ariz)........................................................................55

*In re Krohn,*
203 Ariz. 205, 208 ¶ 9, 52 P.3d 774, 777 (2002)....................................................29

*In Re Mortgage Electronic Registration Systems,*
2011 WL 4550189 at *5 (D.Ariz.)................................................................. 35, 39

*In re Vasquez,*
228 Ariz. 357, 359 ¶ 4, 266 P.3d 1053, 1055 (2011)..............................................29

*Jada v. Wells Fargo Bank, N.A.,*
CV-10-2164-PHX-GMS, 2011 WL 3267330 (D. Ariz. July 29, 2011) .......... 31, 32

*Jarvis v. Regan,*
833 F.2d 149, 155 (9th Cir.1987) .......................................................................23

*Jones v. Bank of America,*
2010 WL 2572997 at *14 (D. Ariz.)............................................................... 44, 48

*Karlsen v. American Savings & Loan Assoc.,*
(1971) 15 Cal.App.3d 112, 117 ..........................................................................37

*Kelson v. City of Springfield,*
767 F.2d 651, 656 (9th Cir.1985) .......................................................................18

*Kohler v. Inter-Tel Technologies,*
244 F.3d 1167, 1182 (9th Cir. 2001) ..................................................................27

*Kuc v. Bank of America, NA,*
2012 WL 1268126, at *2 (D.Ariz. 2012)..............................................................34

*Lindauer v. Rogers,*
91 F.3d 1355, 1357 (9th Cir. 1996) ....................................................................23

*Lucchesi v. Stimmell,*
149 Ariz. 76, 716 P.2d 1013, 1015 (Ariz.1986) ...................................47
149 Ariz. 76, 78, 716 P.2d 1013 (Ariz.1986) ........................................44

*McBride v. Wells Fargo Bank NA,*
CV 11-02592-PHX-FJM, 2012 WL 1078467 (D. Ariz. Mar. 30, 2012).................31

*Mintz v. Bell Atlantic Systems Leasing International, Inc.,*
183 Ariz. 550, 905 P.2d 559 (Ct.App.1995)...........................................45

*Moore v. Kayport Package Exp., Inc.,*
885 F.2d 531, 540 (9th Cir.1989) ........................................................49

*Nelson v. Phoenix Resort Corp.,*
181 Ariz. 188, 199, 888 P.2d 1375 (Ariz.App. 1994) ............................44

*Nielson v. Flashberg,*
101 Ariz. 335, 419 P.2d 514 (1966) .....................................................49

*Patton v. First Fed. Sav. & Loan Ass'n of Phoenix,*
118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) .......................... 33, 45, 47

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
806 F.2d 1393, 1401 (9th Cir. 1986) ....................................................49

*Sec. Sav. & Loan Ass'n v. Milton,*
171 Ariz. 75, 76, 828 P.2d 1216, 1217 (App.1991) ...............................28

*Spielman v. Katz,*
CV10-0184-PHX-JAT, 2010 WL 4038838 (D. Ariz. Oct. 14, 2010) ...................30

*T.G. McCarthy v. Grider,*
(1925) 72 Cal. App. 393 ......................................................................38

*Thomas v. Wells Fargo Bank, N.A.,*
CV-10-901-PHX-GMS, 2011 WL 3809922 (D. Ariz. Aug. 29, 2011)............ 31, 32

vii

*Trollope v. Koerner,*
106 Ariz. 10, 18, 470 P.2d 91, 99 (1970) .......................................................... 56, 58

*United States Cold Storage v. Great Western Savings & Loan Assoc.,*
(1985) 165 Cal.App.3d 1214, 1222 .......................................................................37

Ventura Packers, Inc. v. F/V Jeanine Kathleen,
305 F.3d 913, 916, n. 1 (9th Cir. 2002) ................................................................27

Walls v. Wells Fargo Bank, N.A.,
276 F.3d 502, 511 (9th Cir. 2002) .........................................................................26

*Watts v. Golden Age Nursing Home*,
127 Ariz. 255, 257, 619 P.2d 1032 (Ariz.1980) ....................................................44

*Wells Fargo Credit Corp. v. Smith,*
166 Ariz. 489, 803 P.2d 900 (Ct.App. Div. 1 1990)...............................................49

*Woods v. BAC Home Loans Servicing LP*,
CV-10-723-PHX-GMS, 2011 WL 2746310 (D. Ariz. July 15, 2011) .. 31,32, 33, 34

## Statutes

A.R.S.  33–811(C)...................................................................................................28

A.R.S. § 33-811.................................................................................................. 31, 32

A.R.S. § 33–811(C)...............................................................................................30

A.R.S. 33-811............ 5, 13, 16, 17, 24, 27, 28, 29, 30, 33, 34, 43, 44, 48, 53, 54, 59

Civil Code §1486 ....................................................................................................38

Civil Code §1493 ....................................................................................................38

Civil Code §1494 ....................................................................................................38

Civil Code §1495 ....................................................................................................38

**Other Authorities**

Miller & Starr, California Real Estate,
(3rd Ed 1989) 10 Deeds of Trust § 10:212, pages 658-659....................................37

Restatement (Second) of Torts § 46 (1965)............................................................45

**Rules**

Arizona Rules of Civil Procedure Rule 65 ............................................................17

Fed. R. Civ. P. 12(b)(6)........................................................................................22

Fed.R.Civ.P. 15(a)...............................................................................................21

Rule 15(a)(1)(A) ..................................................................................................23

## JURISDICTIONAL STATEMENT

Defendants-Appellees ONEWEST BANK, F.S.B ("OneWest") and FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae") concur with the Jurisdictional Statement of Plaintiffs-Appellants Anthony and Maria Adrian ("Plaintiffs-Appellants").

## ISSUES PRESENTED

The Plaintiffs-Appellants claim that five separate questions are presented to the Court in this Appeal. *See* Plaintiffs-Appellants Opening Brief ("AOB"), page 3. However, these questions contain duplicative issues. Summarized and simplified, there are three issues before the Court as to Defendants-Appellees Fannie Mae and OneWest:

1. Did the District Court act properly in Granting Fannie Mae and OneWest's Motions to Dismiss for Plaintiffs-Appellants' failure to allege a cognizable claim?

2. Did the District Court act properly in Granting Fannie Mae and OneWest's Motions to Dismiss for Plaintiffs-Appellants' failure to allege sufficient facts in support of their purported claims?

3. Did the District Court act properly in Granting Fannie Mae and OneWest's Motions to Dismiss for Plaintiffs-Appellants' failure to allege that they were not in default under their loan?

## STATEMENT OF THE CASE

### 1. NATURE OF THE CASE

This case presents yet another of the garden variety actions that are inundating the Arizona Courts alleging various inapplicable theories related to the lending industry, deeds of trust, and the statutory non-judicial foreclosure process. Plaintiffs-Appellants do not dispute that they defaulted under their loan and they are simply seeking judicial review over the nonjudicial foreclosure process they agreed to when taking their loan. Moreover, Plaintiffs-Appellants admit that their default was the result of economic hardship and not the result of any act of Defendants-Appellees Federal National Mortgage Association ("Fannie Mae") or OneWest Bank, F.S.B ("OneWest").[1] The fact remains, Plaintiffs-Appellants simply became delinquent in their loan payments and the lender initiated the foreclosure process against the Property pursuant to the Power of Sale provision in the applicable Deed of Trust.

Despite the purported three (3) causes of action in Plaintiffs-Appellants First Amended Complaint for Wrongful Foreclosure, Intentional Infliction of Emotional Distress, and Fraud, the action is essentially premised on two main theories of recovery, namely: (1) that the sale was a "wrongful foreclosure," (2) and that defendants had no authority to conduct the foreclosure sale because they were

somehow obligated to modify Plaintiffs-Appellants' loan regardless of whether Plaintiffs-Appellants could even qualify for a modification.

First and foremost, Plaintiffs-Appellants' first cause of action for Wrongful Foreclosure fails because Arizona Courts do not recognize such a claim. Even *if* wrongful foreclosure was a viable claim, the claim fails on its face due to Plaintiffs-Appellants' failure to allege that they cured their admitted mortgage defaults. Plaintiffs-Appellants' claim for Intentional Infliction of Emotional Distress fails as well because a party may recover under this theory only where the defendant's acts are so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Similarly, Plaintiffs-Appellants' claim for Fraud is equally deficient because A claim for fraud must be pled with particularity, including the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.

Perhaps most importantly, Plaintiffs' loan modification claims fail outright because lenders do not have an obligation or affirmative duty to modify loans just because borrowers demand a modification. In fact, Plaintiffs-Appellants had adequate statutory remedies available to them under A.R.S. 33-811 to challenge the foreclosure sale and obtain a court ordered injunction if they believed that the

---

[1] See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants'

4

pending foreclosure sale was improper or should be enjoined, but Plaintiffs-Appellants failed to exercise these statutory remedies. In fact, because Plaintiffs-Appellants failed to obtain a Court Ordered Injunction prior to the foreclosure sale *they have waived any defense or objection to the sale*.

Moreover, Plaintiffs-Appellants admit in their First Amended Complaint that they were aware that their loan modification application was denied months before the actual sale occurred in May 2011, and the property was not sold at foreclosure until July 2011. As such, Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811.

In short, Plaintiffs-Appellants' action was filed in an unjustified and continuing effort to interfere with a valid foreclosure sale. Because this Appeal is based on universally rejected arguments challenging the foreclosure process, warrantless accusations, and false interpretations of Arizona law, it lacks merit and this Court should affirm the District Court's Judgment and Ruling.

## 2. <u>COURSE OF PROCEEDINGS AND DISPOSITION BELOW</u>

The borrowers filed a Complaint on November 9, 2011, in the Maricopa County Court of the State of Arizona. AOB, p. 4. The Complaint alleged a sole

---

Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6

cause of action for Wrongful Foreclosure. Thereafter, the borrowers filed a First Amended Complaint on December 29, 2011. AOB, p. 4. On January 26, 2012, co-Defendant and Appellee MTC FINANCIAL INC., dba TRUSTEE CORPS ("TRUSTEE CORPS") removed the state court action to the District Court. See, II ER 101 ("Notice of Removal").

On January 31, 2012, TRUSTEE CORPS filed a Motion to Dismiss the First Amended Complaint without leave to amend, together with a Request for Judicial Notice ("RJN"). See, II ER 162-212 (Motion to Dismiss; RJN); III ER 484 (Docket No. 6). On February 2, 2012, Fannie Mae also filed a Motion to Dismiss the First Amended Complaint. See, II ER 213–277 (Motion to Dismiss); III ER 484 (Docket No. 9). At that time, OneWest had not appeared in the action as it was added as a defendant when Plaintiffs amended their complaint and OneWest had not been served with a copy of the First Amended Complaint. On February 23, 2012, the borrowers filed a Response to Fannie Mae's Motion to Dismiss. See, II ER 278 (Plaintiffs' Reply); III ER 484 (Docket No. 13); AOB, p. 4. The borrowers did not file any response to TRUSTEE CORPS' Motion to Dismiss. See, I ER 2 (Order); AOB, p. 4.

On March 30, 2012, the District Court granted both TRUSTEE CORPS' and Fannie Mae's Motions to Dismiss for failure to state a claim. See, I ER 4-5 (Order entered March 29, 2012, pp. 1, 3-4); III ER 485 (Docket No. 20).

With respect to Fannie Mae's Motion to Dismiss, the District Court correctly observed that Arizona courts have not recognized a wrongful foreclosure claim, but that in states that do recognize it, such a claim is typically premised on allegations that the borrower was not in default, or that the default was cured before the trustee's sale. I ER 3 (Order, p. 2). The District Court then noted that the borrowers did not dispute that they defaulted on their mortgage payments before the foreclosure sale. Id. The District Court concluded therefore, that even if a wrongful foreclosure claim were recognized in Arizona, the borrowers had not stated such a claim. Id.

The District Court also gave a detailed explanation as to why each of Plaintiffs' causes of action failed, separately setting out paragraphs for the claims of Wrongful Foreclosure, Intentional Infliction of Emotional Distress, and Fraud. Moreover, the Court noted that Plaintiffs appeared to allege Promissory Estoppel and Breach of Covenant of Good Faith and Fair Dealing claims as well under their general Wrongful Foreclosure allegations. Id. Plaintiffs-Appellants repeatedly argue that the District Court granted the Motions to Dismiss without providing "detailed reasons" or any "explanation" for dismissing the case with prejudice. See, AOB, pp. 12, 18, 23. However, these allegations are disingenuous at best, as the Court Order is four pages long with six separated stated paragraphs of legal analysis and details the District Court's reasoning and the glaring deficiencies and

fatal flaws in Plaintiffs-Appellants First Amended Complaint. A plain reading of the District Court's Order belies Plaintiffs-Appellants' argument.

As such, on March 30, 2012, the District Court Granted Fannie Mae's Motion to Dismiss in its entirety and entered Judgment in Fannie Mae's favor. However, on March 27, 2012, nearly two months after Fannie's Motion was filed and just 3 days prior to the District Court's Ruling, Plaintiffs-Appellants filed a Proof of Service with the Court as to Defendant OneWest. As a result, by Order dated April 3, 2012 the District Court modified the March 30, 2012 Judgment "as same was issued in error" and reopened the case so that OneWest could appear in the action. (ER 7).

In response, on April 12, 2012, OneWest Bank filed a Motion to Dismiss the First Amended Complaint. See, III ER 355 (Motion to Dismiss); III ER 485 (Docket No. 23). On April 18, 2012, the borrowers filed a response to this Motion. See, III ER 355 (Plaintiffs' Reply); III ER 485 (Docket No. 25). On April 26, 2012, the District Court granted OneWest Bank's Motion to Dismiss with prejudice and ordered the clerk to enter final judgment. See, I ER 8, 10 (Order entered April 30, 2012, p. 3); III ER 486 (Docket No. 28).

Just as with Fannie Mae's Motion to Dismiss, The District Court also gave a detailed explanation as to why each of Plaintiffs' causes of action failed as to OneWest, separately setting out paragraphs for the claims of Wrongful

Foreclosure, Intentional Infliction of Emotional Distress, and Fraud. Again, Plaintiffs-Appellants' erroneous argument that the District Court granted the Motions to Dismiss without providing "detailed reasons" or any "explanation" for dismissing the case with prejudice (See, AOB, pp. 12, 18, 23) is utter nonsense.

On April 30, 2012, the District Court entered a Clerk's Judgment in favor of defendants and against the borrowers, pursuant to the District Court's Orders of March 30, 2012, and April 30, 2012. See, I ER 11 ("Clerk's Judgment"); III ER 486 (Docket No. 29 [Clerk's Judgment entered April 30, 2012]).

## STATEMENT OF FACTS

On October 8, 2007, Plaintiffs-Appellants executed a note in the amount of $384,000.00, secured by a Deed of Trust to the subject property located at 14029 North 186th Street, Surprise AZ 85379 (the "Property"). (ER 326). The Deed of Trust ("DOT") securing the loan identified IndyMac Bank, F.S.B., as the Lender and First American Title Insurance Co. was designated as the Trustee. (ER 326). MERS was identified as the beneficiary under the DOT. (ER 326). The DOT was recorded on October 12, 2007. (ER 326). On January 24, 2011, an Assignment of Deed of Trust was executed by IndyMac Bank, F.S.B., assigning its interests under the DOT to OneWest. (ER 331). On January 28, 2011, a Substitution of Trustee was executed, whereby MTC Financial dba Trustee Corps became the substitute trustee under the DOT (ER 333).

9

Plaintiffs-Appellants stopped making payments on the loan and on February 16, 2011, a Notice of Trustee's Sale ("NOTS") was recorded with a May 18, 2011 sale date. (ER 336). On August 9, 2011, an Assignment of Deed of Trust was executed by OneWest, assigning its interests under the DOT to Fannie Mae. (ER 339). Plaintiffs-Appellants failed to cure the default and arrearages, and on July 28, 2011, the Property sold at a foreclosure sale and a Trustee's Deed Upon Sale was recorded. (ER 348).

Plaintiffs-Appellants make a number of argumentative and unsubstantiated claims and allegations in their Statement of Facts (AOB pages 6-11) that are in direct conflict with and contradict admissions made by Plaintiffs-Appellants in their pleadings in this matter. Specifically, Plaintiffs admit that their default under the loan was the result of economic hardship, and not the result of any act of Defendants-Appellees Federal National Mortgage Association ("Fannie Mae") or OneWest Bank, F.S.B ("OneWest"). See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6. Namely, Plaintiffs-Appellants admit the following:

> "19. Plaintiffs made each payment due on the loan from the date they signed the original Deed of Trust until December 2010, when they fell on difficult financial times."

> "20. On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance."

10

> "21. In early 2011, Plaintiffs began discussions with OneWest Bank regarding possible loan modifications." (Appellants' underlying First Amended Complaint ¶¶ 19-21)

Moreover, Plaintiffs-Appellants also have an Appeal pending in the Arizona Court of Appeals related to the Forcible Detainer proceeding. In Plaintiffs-Appellants' Opening Appellate Brief in that matter, Plaintiffs admit as follows:

> "Appellant Anthony and Maria Adrian (Adrians) suffered economic hardship beyond their control during the period leading up to the eventual foreclosure of their home by OneWest Bank" (Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6)

Incredibly, Plaintiffs-Appellants now are alleging a very different set of facts in this Appeal in an attempt to shift blame for their undisputed default, stating as follows:

> In late 2010, Plaintiffs wished to take advantage of HAMP, modify their home loan, and continue meeting their mortgage obligations despite their home's rapidly falling value. (ER 313)…But for Defendant OneWest's wrongful conduct and misleading statements, Plaintiffs would still have perfect credit and still be maintaining their original mortgage payments. (AOB pages 7-8).

Based upon the above, Plaintiffs-Appellants would have this Court believe that they were lured into missing payments by OneWest, when in fact, as Plaintiffs' admit above, "On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance." (Appellants' underlying First Amended Complaint ¶ 20). As such, it was Plaintiffs' inability to pay and maintain their obligations under the loan that lead to their undisputed

11

default, not any conduct on the part of Appellees. Plaintiffs simply seek to shift blame.

Moreover, Plaintiffs-Appellants continue to blur the facts with respect to the sequence of events leading to their loan modification application, subsequent denial, and the ultimate foreclosure sale. Plaintiffs-Appellants admit in their First Amended Complaint that they were aware that their loan modification application was denied months before the actual sale occurred. Plaintiffs-Appellants state as follows:

> "On or about May 10, 2011, Plaintiff received correspondence from Defendant indicating that their loan modification was not possible" and "On July 28, 2011, the Property was sold at public auction." (See Appellants' underlying First Amended Complaint ¶32 and ¶34

In addition, Plaintiffs-Appellants completely mischaracterize and skew the timeline of events with respect to their knowledge of their default, stating as follows:

> By letter dated May 10, 2011 Defendant OneWest, through its special services division, IndyMac, notified Plaintiffs for the first time that HAMP loan modification would no longer be possible due to "imminent foreclosure sale of the property." (ER 345). Until that time, Plaintiffs never received default notice from One West or any other Defendant in this case. (AOB page 9).

Again, incredibly Plaintiffs-Appellants misstate facts. As is discussed above, and as is reflected by the judicially noticeable recorded documents as Plaintiffs' own exhibits, when Plaintiffs-Appellants stopped making payments on the loan, on February 16, 2011, a Notice of Trustee's Sale ("NOTS") was recorded with a May

18, 2011 sale date. (ER 336). As such, Plaintiffs' above allegation in the Appellate Brief that until May 2011 "Plaintiffs never received default notice" is utter nonsense and not supported by Plaintiffs' own exhibits.

As such, Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811. Moreover, these facts defeat Plaintiffs' very claims in that they somehow justifiably relied on representations made by OneWest to their detriment as to the loan modification. Plaintiffs had several months to cure the arrearages, seek alternative financing, file for bankruptcy, or take other action to meet their obligations under the loan. Plaintiffs failed to do any of this, and cannot now allege that the conduct of Appellees in any way prejudiced their ability to pay their loan. In fact, Plaintiffs-Appellants had adequate statutory remedies available to them under A.R.S. 33-811 to challenge the foreclosure sale and obtain a court ordered injunction if they believed that the pending foreclosure sale was improper or should be enjoined, but Plaintiffs-Appellants failed to exercise these statutory remedies.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's ruling entering Judgment in favor of Defendants-Appellees Fannie Mae and OneWest because Plaintiffs-

Appellants admit that their default was the result of economic hardship, and not the result of any act of Defendants-Appellees Fannie Mae or OneWest.[2] The fact remains, Plaintiffs-Appellants simply became delinquent in their loan payments and the lender initiated the foreclosure process against the Property pursuant to the Power of Sale provision in the applicable Deed of Trust.

The AOB purports to present five issues for review. See, AOB, p. 3. However, none of those claimed issues address whether the First Amended Complaint states any claim for relief against Fannie Mae or OneWest. Moreover, none of those claimed issues address whether the First Amended Complaint can be amended to state such a cognizable claim against Fannie Mae or OneWest. The fact is, the District Court acted properly in Granting Fannie Mae and OneWest's Motions to Dismiss for Plaintiffs-Appellants' failure to allege a cognizable claims, and for Plaintiffs-Appellants' failure to allege sufficient facts in support of their purported claims. Most importunity, the District Court properly pointed out very clearly in its Rulings and Orders that the Complaint was Dismissed for Plaintiffs-Appellants' failure to allege that they were not in default under their loan.

In short, Plaintiffs-Appellants' first cause of action for Wrongful Foreclosure fails because Arizona Courts do not recognize such a claim. Even *if*

---

[2] See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6

wrongful foreclosure was a viable claim, the claim fails on its face due to Plaintiffs-Appellants' failure to allege that they cured their admitted mortgage defaults. This is a required element that must be specifically alleged to survive the pleading stage, and Plaintiffs-Appellants failed to do so. As such, the District Court properly Granted Fannie Mae's and OneWest's Motions to Dismiss on this basis.

Plaintiffs-Appellants' claim for Intentional Infliction of Emotional Distress fails as well because a party may recover under this theory only where the defendant's acts are outrageous and extreme and utterly intolerable in a civilized community. Plaintiffs-Appellants allegations do not meet this level of conduct in their pleadings, and the District Court properly Granted Fannie Mae's and OneWest's Motions to Dismiss on this basis.

Similarly, Plaintiffs-Appellants' claim for Fraud is equally deficient because A claim for fraud must be pled with particularity. Particularity means Plaintiffs must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. Plaintiffs-Appellants fall far short of alleging this level of conduct in their pleadings, and the District Court properly Granted Fannie Mae's and OneWest's Motions to Dismiss on this basis.

Perhaps most importantly, Plaintiffs' loan modification claims fail outright because lenders do not have an obligation or affirmative duty to modify loans just because borrowers demand a modification. In fact, Plaintiffs-Appellants admit in

15

their First Amended Complaint that they were aware that their loan modification application was denied two months before the actual sale occurred.[3] (ER 348). As such, Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811.

Plaintiffs-Appellants make a series of conclusory and unsubstantiated claims of conjecture in their AOB which are simply and easily refuted by the facts of this matter and the judicially noticeable recorded documents as Plaintiffs' own exhibits Plaintiffs admit that their default under the loan was the result of economic hardship, and not the result of any act of Defendants-Appellees. Incredibly, Plaintiffs-Appellants now are alleging a very different set of facts in this Appeal in an attempt to shift blame for their undisputed default. Plaintiffs-Appellants would have this Court believe that they were lured into missing payments by OneWest, when in fact, as Plaintiffs' admit above, "On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance." (Appellants' underlying First Amended Complaint ¶ 20). As such, it was Plaintiffs' inability to pay and maintain their obligations under the loan that lead to their undisputed default, not any conduct on the part of Appellees. Plaintiffs

---

[3] See Appellants' underlying First Amended Complaint ¶32 ¶34

simply seek to shift blame. Moreover, Plaintiffs' cannot explain how they somehow justifiably relied on representations made by OneWest to their detriment as to the loan modification. Plaintiffs had several months to cure the arrearages, seek alternative financing, file for bankruptcy, or take other action to meet their obligations under the loan. Plaintiffs failed to do any of this, and cannot now allege that the conduct of Appellees in any way prejudiced their ability to pay their loan.

In fact, because Plaintiffs-Appellants failed to obtain a court ordered injunction prior to the foreclosure sale pursuant to Arizona Rules of Civil Procedure Rule 65 before the sale was held, ***they have waived any defense or objection to the sale***. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811.

Because this Appeal is based on universally rejected arguments challenging the foreclosure process, warrantless accusations, and false interpretations of Arizona law, it lacks merit and this Court should affirm the District Court's Judgment and Ruling.

## ARGUMENT.

## 1.     STANDARD OF REVIEW

There is no basis for a finding of abuse of discretion here. Trial Court orders dismissing a complaint for failure to state a claim are affirmed "on any basis fairly supported by the record." Kelson v. City of Springfield, 767 F.2d 651, 656 (9th

Cir.1985). Even on a *de novo* review of the First Amended Complaint, a fair reading reveals that it: (1) is devoid of any factual content as to Fannie Mae and OneWest; (2) is at best a formulaic recital of parts of elements of claims; and (3) is implausible on its face – i.e., there is simply no cognizable "form of relief" in Arizona against a non-judicial sale foreclosure trustee for wrongful foreclosure or for any form of tortious conspiracy.

Under these circumstances, the District Court could not have "abused its discretion," as the borrowers claim, in dismissing with prejudice a First Amended Complaint that was utterly devoid of facts or of viable claims under Arizona law.

Moreover, Plaintiffs-Appellants admit that they failed to "formally" seek leave of the District Court to file an amended complaint. AOB, p. 17, n. 2. In fact, the borrowers made no such request at all, either formally or informally. Local Rule 15.1(a) of the District of Arizona requires any party wishing to file an amended pleading to file a formal motion to amend along with a new proposed pleading incorporating and highlighting their desired changes. Arizona District Court Local Rule 15.1(a) states: "A party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." See also Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995)

("Only in rare cases will we question the exercise of discretion in connection with the application of local rules."). The borrowers failed to do so. As a result, this Court can and should reject the borrowers' attempt to overturn the District Court's decision where they admittedly disregarded the local district court's rules. See, Gardner v. Martino, 563 F.3d 981, 991 (9th Cir. 2009) (district court did not abuse discretion by denying leave to amend where plaintiffs failed to submit proposed amended complaint); see also, Crown Realty & Dev., Inc. v. Sandblom, 2007 WL 177842, at *3 (D. Ariz. 2007) (denying leave to amend for failure to comply with Local Rule 15.1(a)).

Further, even if Plaintiffs-Appellants were given leave to amend, they have utterly failed to explain how exactly they would amend their erroneous and meritless claims and theories into viable claims against Fannie Mae and OneWest. Rather, Plaintiffs' in their Appellate brief merely regurgitate the same arguments and theories contained in the First Amended Complaint without any legal or factual support to change the meritless nature of their claims. Rather, Plaintiffs-Appellants state the standard of review for a denial of a motion to amend - a motion that Plaintiffs-Appellants never made. In addition, Plaintiffs-Appellants do not detail or explain which binding precedents the District Court misconstrued, or which legal standards it incorrectly applied. The borrowers thus offer no supported arguments to dispute the District Court's conclusion that their legal theories were

entirely without merit.

Although the decision as to whether to permit a plaintiff the opportunity to amend is a discretionary one (Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9thCir. 1990)), it is always proper for the district court to weigh factors such as bad faith, undue delay, prejudice to the opponent, history of prior amendments, and futility. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Denials of requests to amend have been affirmed and upheld on the grounds that proposed amendments would be futile. See, Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend"); Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 1990) ("A district court does not err in denying leave to amend where the amendment would be futile."); Cook, Perkiss & Liehe, Inc. v. No. California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) (affirming denial of leave to amend because "the pleading could not be cured by the allegation of other facts"); Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco, 792 F.2d 1432, 1438 (9th Cir. 1986) (upholding denial of leave because the proposed complaint "simply restat[ed] its prior claims under new labels").

As is demonstrated in this brief, it would be futile to grant Plaintiffs-Appellants leave to amend because there is no cognizable claim for wrongful foreclosure in Arizona and Plaintiffs-Appellants were in admitted and undisputed

default on their loan and never attempted to cure it.

Finally, it is Plaintiffs-Appellants' burden to establish abuse of discretion by showing how the complaint can be amended to state a cause of action. Carvalho v. Equifax Information Services, LLC, 629 F.3d 876, 892-893 (9th Cir.2010). Plaintiffs-Appellants provide this Court with no basis for granting them leave to amend. As such, Appellees Fannie Mae and OneWest respectfully request that this Court dismiss the appeal for failure to properly raise and argue claims of reversible error, or affirm on the merits.

### i.     *Appellants Are Not Entitled to Amend Pursuant to Fed.R.Civ.P. 15(a)*

Plaintiffs-Appellants also assert the argument that they should have been granted leave to amend under Fed.R.Civ.P. 15(a) because "Under Rule 15, a plaintiff may amend its pleading once as a matter of course until twenty-one (21) days following a 'responsive pleading.'" AOB, Section VI.A.1., 13-14. However, the Plaintiffs-Appellants conveniently overlook a key portion of Fed.R.Civ.P. 15(a)(1)(B). Rule 15(a)(1)(B), reads, in its entirety as follows:

> (a) Amendments Before Trial.
> > (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
> > > (A) 21 days after serving it, or
> > > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or ***21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier***. (Emphasis added.)

21

In this case, Appellees did file motions to dismiss under Fed. R. Civ. P. 12(b)(6). Specifically, on January 31, 2012, TRUSTEE CORPS filed a Motion to Dismiss (See, II ER 162-212) and on February 2, 2012, Fannie Mae also filed a Motion to Dismiss (See, II ER 213–277). However, at no time did the Plaintiffs-Appellants file an amended complaint, either within 21 days after service of the initial motion to dismiss, or at any time thereafter. As such, Plaintiffs-Appellants waived their right to file an amended pleading under Rule 15(a)(1) because they did not timely file an amended complaint. They cannot now claim prejudice as it was Plaintiffs-Appellants to not only default under their loan, but to not timely and properly exercise their right to amend. They simply do not like the result of their actions, and are not entitled to a second bite at the apple.

The Plaintiffs-Appellants also argue that they should have been allowed to file an amended complaint 21 days after service of a responsive pleading, and that because no "responsive pleading" was ever filed (only motions to dismiss were filed), the District Court improperly dismissed their case with prejudice. See, AOB, pp. 14-15. However, again Plaintiffs-Appellants conveniently overlook a key provision of the rule. Specifically, Rule 15(a)(1)(A) provides "21 days after service of a motion under Rule 12(b), (e), or (f), **whichever is earlier**."

In this case, it is indisputable and Plaintiffs-Appellants themselves admit, TRUSTEE CORPS served Motion to Dismiss (AOB, p. 4) and the service of the

22

Motion triggered the 21 day time limit for filing an amended pleading, and Plaintiffs-Appellants failed to amend.

## 2.   The Entry of Final Judgment Terminated Any Right to Amend

The Plaintiffs-Appellants argue that the District Court erred in denying the Plaintiffs-Appellants the right to amend their complaint. AOB, p. 15. In support of this erroneous claim, Plaintiffs-Appellants rely on Benson v. JP Morgan Chase Bank, N.A., 673 F.3d 207, 1217 (9th Cir. 2012) and Brier v. N. Cal. Bowling Proprietors' Assn., 316 F.2d 787, 789 (9th Cir. 1963) on the basis that "a plaintiff retains his or her right to amend even after an order dismissing all of her claims before a defendant files a responsive pleading." AOB, Section VI.A.1., p. 14. However, Plaintiffs-Appellants again overlook a key issue with the law - the right to amend once as a matter of course is cut off by "entry of final judgment following dismissal of [the] action." Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir.1987); Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996) (accord). See also, Brier v. N. Cal. Bowling Proprietors' Assn., supra, 316 F.2d at 789, n. 1 (and cases cited there). The District Court's order dismissing the action and ordering entry of final judgment of dismissal [I ER 11 ("Clerk's Judgment"); III ER 486 (Docket Nos. 28, 29)] therefore cut off the Plaintiffs-Appellants' right to amend as a matter of course

**3.** **Plaintiffs-Appellants Never Moved the District Court to Amend, So the District Court Could Not have Abused its Discretion in Denying Leave to Amend**

Strangely, Plaintiffs-Appellants also advance the bizarre argument that while they admit that they "did not formally seek leave to amend from the District Court" [AOB, p. 17, n. 2], the District Court somehow abused its discretion in "denying leave to amend." AOB, Sec. VI.A.3, p. 17.   Not only does the record clearly indicate that Plaintiffs-Appellants never moved the Court to amend (or even reserved the right or mentioned a potential amendment in passing in their oppositions to Fannie Mae and OneWest's Motions to Dismiss), Plaintiffs-Appellants admit this fact in their appellate brief, stating: "Plaintiffs did not formally seek leave to amend from the District Court." AOB page 17, footnote 2.

Because Plaintiffs-Appellants never made a motion to amend their pleading, the District Court never even had an opportunity to exercise its discretion in denying amendment, and Plaintiffs-Appellants have waived that right. See, Ghazali v. Moran, supra, 46 F.3d at 53. (In fact, Plaintiffs-Appellants never even mentioned or requested leave to amend in their Oppositions to Fannie Mae's and OneWest's Motions to Dismiss. See, II ER 278 and ER 455 (Responses to Motion to Dismiss.)

Moreover, the Plaintiffs-Appellants did not move for reconsideration of the District Court's dismissal order, or move to set aside the judgment so that they

could then move to amend. In short, the Plaintiffs-Appellants never gave the District Court the opportunity to exercise its discretion. The Plaintiffs-Appellants cannot now complain to this Court about a motion to amend they never made in the District Court. Elwood v. Drescher, 90 Fed.Appx. 501, 505 (9th Cir. 2004) ("[b]ecause no proper request for leave to amend. . . was made in the district court, we decline to remand for this purpose"); Alaska v. United States, 201 F.3d 1154, 1163-1164 (9th Cir. 2000) (same). As a result, there was no discretion that the District Court could possibly have abused.

The Plaintiffs-Appellants then argue that the District Court abused its discretion because it "failed to articulate its reasoning" for denying leave to amend [AOB, pp. 17-18], even though leave to amend was not requested. While the Plaintiffs-Appellants' position is absurd, even with respect to the fact that the lower court dismissed the matter with prejudice, the fact remains, the District Court did clearly articulate its reasoning and grounds for dismissing the matter. On March 30, 2012, the District Court granted both TRUSTEE CORPS' and Fannie Mae's Motions to Dismiss for failure to state a claim. See, I ER 4-5 (Order entered March 29, 2012, pp. 1, 3-4); III ER 485 (Docket No. 20). In its Order, the District Court detailed its reasoning as to each of Plaintiffs-Appellants' meritless claims. I ER 3 (Order, p. 2). The District Court also gave a detailed explanation as to why each of Plaintiffs' causes of action failed. Plaintiffs-Appellants argue that the

District Court granted the Motions to Dismiss without providing "detailed reasons" or any "explanation" for dismissing the case with prejudice. See, AOB, pp. 12, 18, 23. However, these allegations are disingenuous at best, as the Court Order is four pages long with six separated stated paragraphs of legal analysis details the District Court's reasoning and the glaring deficiencies and fatal flaws in Plaintiffs-Appellants First Amended Complaint. A plain reading of the District Court's Order belies Plaintiffs-Appellants' argument. Moreover, on April 26, 2012, in granting OneWest Bank's Motion to Dismiss, the District Court again gave a detailed explanation as to why each of Plaintiffs' causes of action failed, separately setting out paragraphs for the claims.

The Plaintiffs-Appellants next claim that their "potentially defective pleading could have been corrected by amendment." AOB, p. 17. However, the Plaintiffs-Appellants do not state what amendments they would have made to state a claim against Fannie Mae or OneWest. As a result, this unsupported and undeveloped argument is waived on appeal. *See*, Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 511 (9th Cir. 2002) (issues not discussed in appellant's brief deemed waived); Kohler v. Inter-Tel Technologies, 244 F.3d 1167, 1182 (9th Cir. 2001) (issue mentioned in "statement of issues" but not developed in argument may be considered abandoned). Most importantly, for the reasons discussed below, any possible amendment would have been futile as each cause of action and claim is

fatally defective. See, <u>Ventura Packers, Inc. v. F/V Jeanine Kathleen</u>, 305 F.3d 913, 916, n. 1 (9th Cir. 2002) (declining to address a request for leave to amend made for the first time on appeal). Therefore, had the District Court been presented with a request to amend (and it was not), the District Court would have had ample reasons for denying that request under the standards of <u>Foman v. Davis</u> (undue delay, futility of amendment).

**4.** **Each of Plaintiffs-Appellants' Claims Related to the Foreclosure Process are statutorily barred by A.R.S. 33-811**

Plaintiffs-Appellants admit and the judicially noticeable documents reflect that the foreclosure sale of the Property took place on July 28, 2011. Further, Plaintiffs-Appellants do not, and cannot allege, that they obtained a Court Ordered Injunction prior to the foreclosure sale. Because the foreclosure sale is complete and Plaintiffs-Appellants failed to obtain a Court Ordered Injunction prior to the sale, Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811, which provides in pertinent part:

> (C). **The trustor**…and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to section 33-809 **shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order** granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day **before the scheduled date of the sale**. A copy of the order, the application for the order and the complaint shall be delivered to the trustee within twenty-four hours after entering the order.

In this matter, Plaintiffs-Appellants stopped making payments on the loan and on February 16, 2011, a Notice of Trustee's Sale ("NOTS") was recorded with a May 18, 2011 sale date. (ER 336). Plaintiffs-Appellants failed to cure the default and the Property sold at foreclosure sale (ER 348). Plaintiffs-Appellants failed to obtain an injunction prior to July 28, 2011, the date of the sale, or at any time thereafter. To permit an objecting borrower/trustor, such as Plaintiffs-Appellants in this matter, who did not properly obtain an injunction prior to the sale, to challenge the sale now, after the fact, would render A.R.S. 33–811(C) meaningless. In addition, once the sale has been effected, the trustee's deed raises a "presumption of compliance with the requirements of the deed of trust and [title 33, chapter 6.1 ] relating to the exercise of the power of sale and the sale of the trust property." § 33–811(B); see Sec. Sav. & Loan Ass'n v. Milton, 171 Ariz. 75, 76, 828 P.2d 1216, 1217 (App.1991).

The harsh preclusive effect of A.R.S. 33-811 to a borrower attempting to challenge a foreclosure sale was recently upheld by the Supreme Court of Arizona, which held that **A.R.S. 33-811 acts as an absolute bar to any borrower challenging a foreclosure sale without first obtaining a court ordered injunction prior to the sale**. BT Capital, LLC v. TD Serv. Co. of Arizona, 229 Ariz. 299, 275 P.3d 598 (2012).

In *Bt Capital,* the Supreme Court of Arizona noted that the "deed of trust scheme is a creature of statutes" *In re Vasquez*, 228 Ariz. 357, 359 ¶ 4, 266 P.3d 1053, 1055 (2011) (citing *In re Krohn*, 203 Ariz. 205, 208 ¶ 9, 52 P.3d 774, 777 (2002)) and that objections to a trustee's sale are governed by A.R.S. § 33–811. *Id.* As to A.R.S. 33-811, the Supreme Court of Arizona analyzed the statute as follows:

> Under this statute, **a person who has defenses or objections to a properly noticed trustee's sale has one avenue for challenging the sale: filing for injunctive relief**. Cf. In re Krohn, 203 Ariz. at 214 ¶ 38, 52 P.3d at 783 (allowing debtor to challenge completed trustee's sale based on grossly inadequate bid price). Where, as here, a trustee's sale is completed, **a person subject to § 33–811(C) cannot later challenge the sale based on pre-sale defenses or objections**.[4]

In *BT Capital*, the Supreme Court of Arizona also held that obtaining a court-ordered injunction *is the only manner* in which a party can properly challenge a sale and preserve its rights to challenge the sale, and to conclude otherwise would render the statute meaningless. To the point, the court noted:

> BT's argument misapprehends the interplay of §§ 12–1191 and 33–811…**To conclude otherwise would render § 33–811(C) ineffective**, because a party that failed to obtain an injunction preventing the sale—like BT here—could nonetheless preserve its objections merely by filing a lawsuit and lis pendens.[5]

Consequently, in *BT Capital,* the Supreme Court of Arizona concluded that **A.R.S. 33-811 acts as a complete bar to any challenge to a sale made by a borrower**

---

[4] *BT Capital, LLC v. TD Serv. Co. of Arizona, 229 Ariz. 299, 275 P.3d 598 (2012).*

**without first obtaining a court ordered injunction**. As such, the Supreme Court of Arizona held that by failing to fulfill the strict and plain language requirements of A.R.S. § 33–811(C), the plaintiffs challenging the sale in that matter waived their claims to later challenge the foreclosure sale. See also *Spielman v. Ka*tz, CV10-0184-PHX-JAT, 2010 WL 4038838 (D. Ariz. Oct. 14, 2010) and *Coleman v. Am. Home Mortg. Servicing*, 2010 U.S. Dist. LEXIS 30922, *10–11, 2010 WL 1268141 (D.Ariz.2010). In interpreting statutes, Courts are to give effect to the plain meaning of statutes and to each word of the statute as appropriate. See *Bilke v. State*, 206 Ariz. 462, 464-465, ¶ 11, 80 P.3d 269, 271-72 (2003) and *CNL Hotels & Resorts, Inc. v. Maricopa County,* 226 Ariz. 155, 159, ¶ 15, 244 P.3d 592, 596 (App.2010) ("In interpreting statutes, courts are under a duty to give statutes operation and effect and should avoid a construction that leaves the statute meaningless or of no effect."

Here, Plaintiffs-Appellants were not only given proper and actual notice of the sale, but in addition, the actual sale didn't occur for almost six months after the Notice of Sale was recorded. As is detailed above, on February 16, 2011, a Notice of Trustee's Sale was recorded with a May 18, 2011 sale date. (ER 336). Plaintiffs-Appellants failed to cure the default and arrearages, and on July 28, 2011, the Property sold at a foreclosure sale and a Trustee's Deed Upon Sale was

[5] *Id.*

30

recorded. (ER 348).  Plaintiffs-Appellants failed to obtain an injunction prior to July 28, 2011, or at any time thereafter.  As such, Plaintiffs-Appellants had more than ample time to obtain an injunction. The fact is, Plaintiffs-Appellants failed to do so, and any claim they can possibly raise now to challenge the sale has been waived.

Further, Arizona Courts have applied the preclusive effect of A.R.S. § 33-811 to bar borrowers attempts to circumvent the statute based on estoppel, tolling, due process, and other equitable arguments. Borrower's claims that they "did not have time to request an injunction at state court" and that there "should be leeway for self-representing homeowners" have been outright rejected. See *Thomas v. Wells Fargo Bank, N.A.*, CV-10-901-PHX-GMS, 2011 WL 3809922 (D. Ariz. Aug. 29, 2011); *Jada v. Wells Fargo Bank, N.A.*, CV-10-2164-PHX-GMS, 2011 WL 3267330 (D. Ariz. July 29, 2011); *Woods v. BAC Home Loans Servicing LP*, CV-10-723-PHX-GMS, 2011 WL 2746310 (D. Ariz. July 15, 2011); and *McBride v. Wells Fargo Bank NA*, CV 11-02592-PHX-FJM, 2012 WL 1078467 (D. Ariz. Mar. 30, 2012).  Specifically, the Court in *Thomas v. Wells Fargo Bank, N.A.*, concluded:

> Plaintiff asserts that he did not have time to request an injunction at state court. Nevertheless**, the statute puts the burden on the Plaintiff to** prepare the necessary evidence to **obtain a preliminary injunction** or a temporary restraining order, and bring it before the

court, if necessary in an emergency motion, so that the court can rule **prior to the occurrence of the foreclosure sale**.[6]

Moreover, the Court in *Jada v. Wells Fargo Bank, N.A.* further noted that equitable defenses under 33-811 are not available, stating that **33-811 "does not provide leeway** for those who might not have been aware of their obligation to obtain injunctive relief before the trustee's sale."[7] As to any attempt Plaintiffs-Appellants could make to circumvent 33-811, borrower's arguments related to due process and prejudice to home owners have also been rejected as grounds to salvage claims waived under 33-811. The Court in *Woods v. BAC Home Loans Servicing LP* analyzed the borrowers' due process argument as follows:

> "They assert that this failure '[i]n the interest of justice and due process, ... should never preclude a homeowner from acting in his defense within the legal system to save his home and obtain restitution.' Unfortunately for plaintiffs, that is exactly what the statute [33-811] does at least insofar as it relates to allowing the plaintiffs to now contest the sale of their home."[8]

As such, even arguments that lenders and trustees should be estopped from relying on A.R.S. § 33-811 have been repeatedly rejected by Arizona Courts, regardless of the harsh effect. So even if Plaintiffs-Appellants attempt to argue that the application of A.R.S. § 33-811 is unfair or should be estopped as a result of

---

[6] *Thomas v. Wells Fargo Bank, N.A.*, CV-10-901-PHX-GMS, 2011 WL 3809922 (D. Ariz. Aug. 29, 2011)
[7] *Jada v. Wells Fargo Bank, N.A.*, CV-10-2164-PHX-GMS, 2011 WL 3267330 (D. Ariz. July 29, 2011)

defendants' conduct with respect to a loan modification, Plaintiffs-Appellants' claims will still fail based upon the above and Arizona cases interpreting A.R.S. § 33-811.

Finally, even if Plaintiffs-Appellants could overcome the above, the statutes governing deeds of trust **neither state nor imply ... any relief other than a voiding of the sale."** *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978). As a result, Plaintiffs-Appellants' various economic claims for **monetary damages and attorney's fees** are also outright barred by the statutes, and the Plaintiffs-Appellants' only claim for relief here would be to set aside the sale and restore title and payments under the loan – relief that Plaintiffs-Appellants are simply not entitled to nor in a position to perform as they have utterly failed to allege a tender to the amounts due and owing.

As such, Plaintiffs-Appellants had adequate statutory remedies available to them under A.R.S. 33-811 to challenge the foreclosure sale and obtain a court ordered injunction if they believed the sale to be improper, but Plaintiffs-Appellants failed to do so and their claims are not statutorily barred.

**EACH OF PLAINTIFFS-APPELLANTS' CAUSES OF ACTION FAIL ON THE MERITS AND ARE NOT COGNIZABLE CLAIMS**

---

[8] *Woods v. BAC Home Loans Servicing LP*, CV-10-723-PHX-GMS, 2011 WL 2746310 (D. Ariz.

**5.**     **Plaintiffs-Appellants' Wrongful Foreclosure Cause of Action Fails**

    i.     *The Plaintiffs-Appellants Offer No Basis for This Court to Recognize the Potential Claim of Wrongful Foreclosure in Arizona*

As noted above, and in the District Court's Orders, Arizona does not recognize a claim for wrongful foreclosure. <u>Cervantes v. Countrywide Home Loans, Inc.,</u> supra, 656 F.3d at 1038, 1043; <u>Kuc v. Bank of America</u>, NA, 2012 WL 1268126, at *2 (D.Ariz. 2012) (claim of wrongful foreclosure not yet recognized by Arizona state courts). In Section VI.B. of their Brief, the Plaintiffs-Appellants argue that their claim for Wrongful Foreclosure is "the type of claim Arizona Courts should recognize." AOB, Sec. VI.B.1., p. 24. That is the problem: Arizona Courts have NOT recognized this claim – especially where, as here, the Plaintiffs-Appellants defaulted on their mortgage and not tendered the amount due [III ER 315 (First Amended Complaint, p. 7, ¶28)]. See, <u>Cervantes v. Countrywide Home Loans</u>, Inc., supra, 656 F.3d at 1043. Moreover, Plaintiffs-Appellants concede that Wrongful Foreclosure is not a cognizable legal theory in Arizona [AOB, p. 24], so there is simply no way that the Plaintiffs-Appellants can state a claim.

Further, one case in the District of Arizona noted that no Arizona Court had recognized the tort of wrongful foreclosure. <u>Herring v. Countrywide Home Loans, Inc.,</u> 2007 WL 2051394 at *5 (D.Ariz. July 13, 2007). The District Court reasoned

July 15, 2011)

34

that a claim for wrongful foreclosure may potentially arise only "after a breach or default," *when the plaintiff had cured any defaults before the trustee's sale*, and the trustee allowed the trustee's sale to go forward anyway. This theoretical scenario is not even the case in this matter, as Plaintiffs have not cured their default. As such, Plaintiffs-Appellants' Wrongful Foreclosure claim utterly fails and Plaintiffs offer no explanation as to how they could possibly have alleged a valid claim under this theory.

ii.     *The Plaintiffs-Appellants Fail to Allege they Were Not in Default*

It is undisputed in this matter that Plaintiffs-Appellants were in default under the loan due to economic hardship, and not the result of any act of Defendants-Appellees Fannie Mae or OneWest. See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6. Even if Arizona Courts would find a claim for wrongful foreclosure viable at some point, such a wrongful foreclosure claim is unlikely to become viable in Arizona where (as here) the borrowers were in default on their mortgage and have offered no prospect of being able to pay it. A claim for wrongful foreclosure requires that the plaintiff establish that he or she was not in default when the power of sale was exercised or that the borrower was able to tender the debt owed on the mortgage. <u>In Re Mortgage Electronic Registration Systems</u>, 2011 WL 4550189 at *5 (D.Ariz.) citing

35

Cervantes v. Countrywide Home Loans, Inc., supra, 656 F.3d at 1043-1044.

Here, the borrowers expressly admit that "due to Plaintiff's extended leave from his employment, Plaintiff had no other option but to default." See, III ER 315 (First Amended Complaint, p. 7, ¶28). Specifically, Plaintiffs admit that their default under the loan was the result of economic hardship, and not the result of any act of Fannie Mae or OneWest. See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6. Namely, Plaintiffs-Appellants admit the following:

> "19. Plaintiffs made each payment due on the loan from the date they signed the original Deed of Trust until December 2010, when they fell on difficult financial times."

> "20. On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance."

> "21. In early 2011, Plaintiffs began discussions with OneWest Bank regarding possible loan modifications." (Appellants' underlying First Amended Complaint ¶¶ 19-21)

As such, not only do Plaintiffs fail to allege they weren't in default or that they have tendered prior to the sale, but Plaintiffs actually admit their default occurred prior to any loan modification discussions with Fannie Mae or OneWest.

   iii.   *The Wrongful Foreclosure Claims Fail Under Other Ninth Circuit Jurisdiction's Law as well*

Appellees-Defendants Fannie Mae and OneWest hereby join in the detailed arguments and analysis advanced by co-Appellee-Defendant MTC/TRUSTEE

36

CORPS in their respective Answering Brief with respect to Nevada law as to wrongful foreclosure claims. See TRUSTEE CORPS' Answering Brief pages 53-57. The following is an analysis of similar California law. In addition, to said Nevada discussion from TRUSTEE CORPS in their respective Answering Brief (See TRUSTEE CORPS' Answering Brief pages 53-57), Fannie Mae and OneWest submit the following additional discussion related to California's similar requirements of tender and discharge of debt.

It is well settled in California that a borrower seeking to avoid a foreclosure sale must do equity by tendering the amount owing under the loan.  In this regard, as a matter of law, in order to challenge a "wrongful" foreclosure sale for any reason, or set it aside, or to bring any claim arising from a foreclosure sale, the plaintiff must tender to cure the delinquent loan. Abdallah v. United Savings Bank (1996) 43 Cal.App.4th 1101, 1109 (emphasis added.); see also, United States Cold Storage v. Great Western Savings & Loan Assoc. (1985) 165 Cal.App.3d 1214, 1222; Karlsen v. American Savings & Loan Assoc. (1971) 15 Cal.App.3d 112, 117; Arnolds Management Corp. v. Eischen (1984) 158 Cal.App.3d 575, 578-579.

Further, the tender must be made in *good faith*; the party making the tender must have the *ability to perform*; and the tender must be *unconditional.* See, Miller & Starr, California Real Estate (3rd Ed 1989) 10 Deeds of Trust § 10:212, pages 658-659. see also, Civil Code §1486 (full performance), 1493 (good faith), 1494

37

(unconditional) and 1495 (offeror must have ability to perform).

In addition, facts demonstrating the ability to tender are mandatory. *California Civil Code* §1495 unequivocally provides that "an offer of performance is of no effect if the person making it is not able and willing to perform according to the offer." This rule was echoed in <u>T.G. McCarthy v. Grider</u> (1925) 72 Cal. App. 393, in which the court noted that while the money may not have to be produced with the offer, the party must have the "money in fact." This *requires the party to plead facts to show that on deposit in a bank to be identified in the offer, the money requisite to make good on the offer.*

The Tender Rule is not merely limited to equitable claims in California. Courts have consistently expanded the application of the Tender Rule beyond equitable causes of action to include any cause of action that is "implicitly integrated" with a foreclosure sale. <u>Arnolds Management Corp. v. Eischen</u> (1984) 158 Cal.App.3d 575, 578-579. When a borrower seeks to set aside and unwind a foreclosure sale by asserting various causes of action to attack the foreclosure process, under this principle, each of those borrower's Causes of Action are "implicitly integrated" with the foreclosure, and the Tender Rule applies as a bar to the entire action. When a plaintiff provides no facts to substantiate that it is ready, willing, or able to tender to cure its indebtedness under the loan, the plaintiff has not adequately plead any injury in fact because it has not shown to the Court by

38

any means that it would or even could be in a reasonable position to cure its default in the event the foreclosure sale was indeed set aside. As such, in those instances adjudicating this matter would simply be an exercise in futility for the Court.

This case is no different. Not only have Plaintiffs-Appellants failed to comply with Arizona law in alleging they were not in default as required by In Re Mortgage Electronic Registration Systems, 2011 WL 4550189 at *5 (D.Ariz.) citing Cervantes v. Countrywide Home Loans, Inc., supra, 656 F.3d at 1043-1044, but they also have conceded that wrongful foreclosure is not a cognizable legal theory in Arizona [AOB, p. 24], and they utterly failed to articulate how they could amend to overcome this hurdle. The borrowers then state that the District Court failed to analyze whether Arizona Courts would find such a claim viable, and they invite this Court to undertake that analysis. AOB, Sec. VI.B.1., p. 24. Yet, the borrowers offer no analysis of their own, and as such have waived this argument.

   iv.    *The Plaintiffs-Appellants' Claims of Fraud in Connection with their Meritless Wrongful Foreclosure Claim also Fail*

Plaintiffs-Appellants then claim that the District Court failed to analyze whether Arizona Courts would find such a claim viable, and they invite this Court to undertake that analysis. AOB, Sec. VI.B.1., p. 24. Yet, the Plaintiffs-Appellants offer no analysis of their own, and as such have waived this argument. At best, in the prior Section VI.A.3. of the AOB, the Plaintiffs-Appellants make a weak attempt to distinguish their tortious Wrongful Foreclosure claim from the tortious

Wrongful Foreclosure claim that <u>Cervantes</u> refused to recognize. AOB, Sec. VI.A.3, pp. 20-21.However, as the Wrongful Foreclosure claims in both cases were based on the underlying tort of fraud, this is a distinction without a difference. AOB, Sec. VI.A.3, p. 20; <u>Cervantes v. Countrywide Home Loans, Inc</u>., supra, 656 F.3d at 1038, 1041-1042. Even if this Court were to read into Plaintiffs-Appellants' conclusory claims of conjecture related to the loan modification process in this matter under a general fraud theory, which is discussed in full below, Plaintiffs-Appellants' claims still fail based on the facts and admissions made by Plaintiffs-Appellants and their fraud claims are woefully inadequate and lack specificity.

Specifically, Plaintiffs-Appellants make a number of argumentative and unsubstantiated claims and allegations in their Statement of Facts (AOB pages 6-11) that are in direct conflict with and contradict admissions made by Plaintiffs-Appellants in their pleadings in this matter. Namely, Plaintiffs admit that their default under the loan was the result of economic hardship, and not the result of any act of Defendants-Appellees Federal National Mortgage Association ("Fannie Mae") or OneWest Bank, F.S.B ("OneWest"). See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6. Namely, Plaintiffs-Appellants admit the following:

> "19. Plaintiffs made each payment due on the loan from the date they signed the original Deed of Trust until December 2010, when they fell

on difficult financial times."

"20. On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance."

"21. In early 2011, Plaintiffs began discussions with OneWest Bank regarding possible loan modifications." (Appellants' underlying First Amended Complaint ¶¶ 19-21)

Moreover, Plaintiffs-Appellants also have an Appeal pending in the Arizona Court of Appeals related to the Forcible Detainer proceeding. In Plaintiffs-Appellants' Opening Appellate Brief in that matter, Plaintiffs admit as follows:

"Appellant Anthony and Maria Adrian (Adrians) suffered economic hardship beyond their control during the period leading up to the eventual foreclosure of their home by OneWest Bank" (Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6)

Incredibly, Plaintiffs-Appellants now are alleging a very different set of facts in this Appeal in an attempt to shift blame for their undisputed default, stating as follows:

In late 2010, Plaintiffs wished to take advantage of HAMP, modify their home loan, and continue meeting their mortgage obligations despite their home's rapidly falling value. (ER 313)…But for Defendant OneWest's wrongful conduct and misleading statements, Plaintiffs would still have perfect credit and still be maintaining their original mortgage payments. (AOB pages 7-8).

Based upon the above, Plaintiffs-Appellants would have this Court believe that they were lured into missing payments by OneWest, when in fact, as Plaintiffs' admit above, "On or about December 2010, Plaintiffs fell victim to the difficult

economic times, and found it necessary to seek hardship assistance." (Appellants' underlying First Amended Complaint ¶ 20). As such, it was Plaintiffs' inability to pay and maintain their obligations under the loan that led to their undisputed default, not any conduct on the part of Appellees. Plaintiffs simply seek to shift blame, and cannot allege the required elements of fraud or promissory estoppel (as is detailed by the District Court in its Order granting the Motions to Dismiss).

Moreover, Plaintiffs-Appellants continue to blur the facts with respect to the sequence of events leading to their loan modification application, subsequent denial, and the ultimate foreclosure sale. Plaintiffs-Appellants admit in their First Amended Complaint that they were aware that their loan modification application was denied months before the actual sale occurred. Plaintiffs-Appellants state as follows:

> "On or about May 10, 2011, Plaintiff received correspondence from Defendant indicating that their loan modification was not possible" and "On July 28, 2011, the Property was sold at public auction." (See Appellants' underlying First Amended Complaint ¶32 and ¶34

In addition, Plaintiffs-Appellants completely mischaracterize and skew the timeline of events with respect to their knowledge of their default, stating as follows:

> By letter dated May 10, 2011 Defendant OneWest, through its special services division, IndyMac, notified Plaintiffs for the first time that HAMP loan modification would no longer be possible due to "imminent foreclosure sale of the property." (ER 345). Until that time, Plaintiffs never received default notice from One West or any other Defendant in this case. (AOB page 9).

42

Again, incredibly Plaintiffs-Appellants misstate facts. As is discussed above, and as is reflected by the judicially noticeable recorded documents as Plaintiffs' own exhibits, when Plaintiffs-Appellants stopped making payments on the loan, on February 16, 2011, a Notice of Trustee's Sale ("NOTS") was recorded with a May 18, 2011 sale date. (ER 336). As such, Plaintiffs' above allegation in the Appellate Brief that until May 2011 "Plaintiffs never received default notice" is utter nonsense and not supported by Plaintiffs' own exhibits.

As such, Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811. Moreover, these facts defeat Plaintiffs' very claims in that they somehow justifiably relied on representations made by OneWest to their detriment as to the loan modification. Plaintiffs had several months to cure the arrearages, seek alternative financing, file for bankruptcy, or take other action to meet their obligations under the loan. Plaintiffs failed to do any of this, and cannot now allege that the conduct of Appellees in any way prejudiced their ability to pay their loan. In fact, Plaintiffs-Appellants had adequate statutory remedies available to them under A.R.S. 33-811 to challenge the foreclosure sale and obtain a court ordered injunction if they believed that the pending foreclosure sale was improper or should be enjoined, but Plaintiffs-Appellants failed to exercise these statutory

43

remedies.

Based on the foregoing, Plaintiffs-Appellants' Wrongful Foreclosure claim fails on its face for various reasons, and even in Plaintiffs-Appellants attempt to argue Wrongful foreclosure under a fraud theory, it still fails as is discussed throughout this brief and more fully below.

**6.    Plaintiffs-Appellants' Intentional Infliction of Emotional Distress Cause of Action Fails**

Plaintiffs-Appellants' Intentional Infliction of Emotional Distress Cause of Action also fails on its face. To prove a claim of intentional infliction of emotional distress under Arizona law, Plaintiff must show that: 1) defendants engaged in extreme and outrageous conduct; 2) defendants either intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result from the conduct; and 3) severe emotional distress resulted because of defendants' conduct. Jones v. Bank of America, 2010 WL 2572997 at *14 (D. Ariz.), citing Nelson v. Phoenix Resort Corp., 181 Ariz. 188, 199, 888 P.2d 1375 (Ariz.App. 1994). Watts v. Golden Age Nursing Home, 127 Ariz. 255, 257, 619 P.2d 1032 (Ariz.1980). "To establish a claim under this tort, the conduct alleged must be 'atrocious' and 'beyond all possible bounds of decency' so that an average member of the community would regard it as outrageous. Lucchesi v. Stimmell, 149 Ariz. 76, 78, 716 P.2d 1013 (Ariz.1986). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as

so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Id.* at 79, 716 P.2d 1013 (quoting Restatement (Second) of Torts § 46 (1965)).

A plaintiff may recover for intentional infliction of emotional distress only where the defendant's acts are "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." <u>Patton v. First Fed. Sav. and Loan Ass'n of Phoenix</u>, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (quoting <u>Cluff v. Farmers Ins. Exchange</u>, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969)). Only when reasonable minds could differ as to whether the conduct described is sufficiently extreme or outrageous does the issue go to the jury. <u>Mintz v. Bell Atlantic Systems Leasing International, Inc.</u>, 183 Ariz. 550, 905 P.2d 559 (Ct.App.1995).

In *Patton*, 118 Ariz. 473, 578 P.2d 152, the Arizona Court of Appeals held that the granting of summary judgment against the plaintiff for a claim of intentional infliction of emotional distress was proper because the trustee sale at issue was not so outrageous that it would be considered atrocious or intolerable in the community. In that case, the plaintiff Mrs. Patton entered into a contract with First Federal Savings to pledge a $2,000 savings account for two years in order to get a loan to finance the purchase of a home. Sometime later, Mrs. Patton entered into an agreement to sell the home, leaving First Federal as the first beneficiary and

45

maintaining that Mrs. Patton would be responsible to the bank. First Federal then demanded that a transfer fee be paid along with a half percent raise in interest rate or the bank would require that the entire balance be paid under the "due on sale" provision of the Trust Deed. Mrs. Patton continued to make loan payments and had never been in default until First Federal refused to accept payments. However, the bank initiated a foreclosure sale and failed to give correct notice under A.R.S. § 33-801.

Mrs. Patton claimed the conduct by First Federal constituted intentional infliction of emotional distress. First Federal filed a Motion for Summary Judgment as to the claim and the trial court granted the motion. The Court of Appeals held that "while some of appellees' behavior may have been harsh and may have upset Mrs. Patton, it is still within the realm of acceptable business practice ." Id.

In this case, Plaintiffs-Appellants wholly failed to set forth and analyze the elements of intentional infliction of emotional distress. It was Plaintiffs-Appellants' burden to set forth factual allegations of each element of a claim giving rise to a plausible claim, and Plaintiffs-Appellants merely provided a formulaic recitation of the elements of [the] cause of action which will not suffice.

The Plaintiffs-Appellants' only allegation of supposedly outrageous conduct was that "OneWest forced Plaintiff to default on their (sic) loan in order to begin

46

loan modification. OneWest then continued to drag the loan modification process indefinitely, resulting in the foreclosure of Plaintiff's family home." III ER 318 (First Amended Complaint, p. 10, ¶55). In fact, conduct by the lender in <u>Cervantes</u> that was very similar to that alleged by the borrowers here was held not to be extreme and outrageous. See, <u>Cervantes v. Countrywide Home Loans, Inc.</u>, supra, 656 F.3d at 1046 (lenders fraudulently offered borrowers home loans that lenders knew borrowers could not repay). Thus, even in the light most favorable to Plaintiffs-Appellants, such actions by defendant do not rise to the level of "extreme or outrageous" such that they would be "intolerable to civilized society." *Patton*, 118 Ariz. 473, 578 P.2d 152. Such conduct, however, does not rise to the level of "atrocious," and does not go "beyond all possible bounds of decency." Id.

Even assuming arguendo that the foreclosure sale proceedings were unlawful, "it is not enough that Defendants acted with an intent that is tortious or even criminal." Restatement (Second) of Torts § 46 cmt. d." The conduct must rise to the level "so that an average member of the community would regard it as outrageous." *Lucchesi v. Stimmell,* 149 Ariz. 76, 716 P.2d 1013, 1015 (Ariz.1986). Plaintiffs-Appellants failed to assert factual allegations of conduct "exceeding all bounds of decency." They also failed to allege facts to support the allegation that defendants intended to cause emotional distress or that actual emotional distress resulted from Fannie's or OneWest's conduct. As for the law, in Arizona, the act of

wrongful foreclosure (not a viable independent claim in Arizona as discussed above) does not amount to conduct "so outrageous as to go beyond all possible bounds of decency" required for an emotional distress claim. <u>Cervantes v. Countrywide Home Loans, Inc</u>., supra, 656 F.3d at 1046; <u>Wilson v. GMAC Mortg., LLC</u>, 2011 WL 4101668 at \*5 (D.Ariz.) (intentional delay of loan modification application for five months, foreclosure on home for which plaintiff was in default, rejection of loan modification application, and breaching contractual provision, although arguably offensive, held not utterly intolerable and beyond all bounds of decency); <u>Jones v. Bank of America</u>, supra, 2010 WL 2572997 at \*14. Accordingly, this claim fails.

Therefore, as a matter of law, Plaintiffs-Appellants failed to state a claim upon which relief can be granted for intentional infliction of emotional distress

**7.**    **<u>Plaintiffs-Appellants' Cause of Action for Fraud Fails</u>**

Plaintiffs-Appellants Fraud cause of action fails because they did not and cannot plead sufficient facts to constitute a cause of action for fraud. To make a claim for fraud, the plaintiff must show: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speaker's intent that it be relied upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequential or proximate injury.

Wells Fargo Credit Corp. v. Smith, 166 Ariz. 489, 803 P.2d 900 (Ct.App. Div. 1 1990); See, e.g., Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). These elements require that a claim of fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Castro v. Executive Trustee Serv., LLC., 2009 WL 438683 (D.Ariz.2009). The plaintiff must allege the "who, what, when, where and how" to support a fraud claim. *Id*. Further, a plaintiff must set forth what is false or misleading about a statement and why it is false. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir.1989).

A claim for fraud must be pled with particularity. Rule 9(b), Fed. R. Civ. P. Particularity means "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiffs' complaint does not contain any particular allegations regarding the circumstances of the alleged fraud.

Plaintiffs-Appellants utterly fail to meet the above criteria. Plaintiffs-Appellants fail to allege the most basic of facts to show the "how, when, where, who" elements of a cause of action for fraud against defendants. Instead, Plaintiffs-Appellants simply allege in conclusory fashion that defendant somehow

49

induced Plaintiffs into defaulting under their loan. First, this allegation fails on its face because Plaintiffs-Appellants admit in their Complaint that the defaulted due to difficult economic times.[9] This allegation does not state a claim for fraudulent inducement. One of the elements of fraudulent inducement is that the statement must be false. There is no showing that a statement by defendants was false.

Moreover, and perhaps most importantly, the facts in this matter do not support Plaintiffs-Appellants' bizarre contentions. As is discussed above in detail, Plaintiffs-Appellants make a number of argumentative and unsubstantiated claims and allegations in their briefs that are in direct conflict with and contradict admissions made by Plaintiffs-Appellants in their pleadings in this matter. Specifically, Plaintiffs admit that their default under the loan was the result of economic hardship, and not the result of any act of Fannie Mae or OneWest See Appellants' underlying First Amended Complaint ¶¶ 19-21, and 28; See Also Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6. Namely, Plaintiffs-Appellants admit the following:

> "19. Plaintiffs made each payment due on the loan from the date they signed the original Deed of Trust until December 2010, when they fell on difficult financial times."

> "20. On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance."

---

[9] *See* Complaint ¶19-20, 28

50

> "21. In early 2011, Plaintiffs began discussions with OneWest Bank regarding possible loan modifications." (Appellants' underlying First Amended Complaint ¶¶ 19-21)

Moreover, Plaintiffs-Appellants also have an Appeal pending in the Arizona Court of Appeals related to the Forcible Detainer proceeding. In Plaintiffs-Appellants' Opening Appellate Brief in that matter, Plaintiffs admit as follows:

> "Appellant Anthony and Maria Adrian (Adrians) suffered economic hardship beyond their control during the period leading up to the eventual foreclosure of their home by OneWest Bank" (Appellants' Opening Brief in Forcible Detainer Appeal 1-CA-CV 11-0758, Page 4, lines 5-6)

Incredibly, Plaintiffs-Appellants now are alleging a very different set of facts in this Appeal in an attempt to shift blame for their undisputed default, stating as follows:

> In late 2010, Plaintiffs wished to take advantage of HAMP, modify their home loan, and continue meeting their mortgage obligations despite their home's rapidly falling value. (ER 313)…But for Defendant OneWest's wrongful conduct and misleading statements, Plaintiffs would still have perfect credit and still be maintaining their original mortgage payments. (AOB pages 7-8).

Based upon the above, Plaintiffs-Appellants would have this Court believe that they were lured into missing payments by OneWest, when in fact, as Plaintiffs' admit above, "On or about December 2010, Plaintiffs fell victim to the difficult economic times, and found it necessary to seek hardship assistance." (Appellants' underlying First Amended Complaint ¶ 20). As such, it was Plaintiffs' inability to pay and maintain their obligations under the loan that lead to their undisputed

51

default, not any conduct on the part of Appellees, and as a result, Plaintiffs' claim of fraudulent inducement fails – they were already in default at the time they sought out a loan modification. Plaintiffs simply seek to shift blame.

Moreover, Plaintiffs-Appellants continue to blur the facts with respect to the sequence of events leading to their loan modification application, subsequent denial, and the ultimate foreclosure sale. Plaintiffs-Appellants admit in their First Amended Complaint that they were aware that their loan modification application was denied months before the actual sale occurred. Plaintiffs-Appellants state as follows:

> "On or about May 10, 2011, Plaintiff received correspondence from Defendant indicating that their loan modification was not possible" and "On July 28, 2011, the Property was sold at public auction." (See Appellants' underlying First Amended Complaint ¶32 and ¶34

Moreover, in their Appellate Brief in this matter, Plaintiffs-Appellants now state that the foreclosure sale occurred on September 6, 2011. (See Also Appellants' Opening Brief, Page 9 and ER 348). The correct date of the sale is in fact July 28, 2011, and on September 6, 2011, a Trustee's Deed Upon Sale was recorded thereafter. (ER 348).

In addition, Plaintiffs-Appellants completely mischaracterize and skew the timeline of events with respect to their knowledge of their default, stating as follows:

> By letter dated May 10, 2011 Defendant OneWest, through its special services division, IndyMac, notified Plaintiffs for the first time that HAMP loan modification would no longer be possible due to "imminent foreclosure sale of the property." (ER 345). Until that time, Plaintiffs never received default notice from One West or any other Defendant in this case. (AOB page 9).

Again, incredibly Plaintiffs-Appellants misstate facts. As is discussed above, and as is reflected by the judicially noticeable recorded documents as Plaintiffs' own exhibits, when Plaintiffs-Appellants stopped making payments on the loan, on February 16, 2011, a Notice of Trustee's Sale ("NOTS") was recorded with a May 18, 2011 sale date. (ER 336). As such, Plaintiffs' above allegation in the Appellate Brief that until May 2011 "Plaintiffs never received default notice" is utter nonsense and not supported by Plaintiffs' own exhibits.

As such, Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811. Moreover, these facts defeat Plaintiffs' very claims in that they somehow justifiably relied on representations made by OneWest to their detriment as to the loan modification. Plaintiffs had several months to cure the arrearages, seek alternative financing, file for bankruptcy, or take other action to meet their obligations under the loan. Plaintiffs failed to do any of this, and cannot now allege that the conduct of Appellees in any way prejudiced their ability to pay their loan. In fact, Plaintiffs-Appellants had adequate statutory remedies available to them

under A.R.S. 33-811 to challenge the foreclosure sale and obtain a court ordered injunction if they believed that the pending foreclosure sale was improper or should be enjoined, but Plaintiffs-Appellants failed to exercise these statutory remedies. Plaintiffs' fraud claims fail for the same reason that the rest of their claims fail.

## 8.    Plaintiffs-Appellants' Allegations Related to a Breach of the Implied Covenant of Good Faith and Fair Dealing Fail.

As noted by the District Court, Plaintiffs appeared to allege that breach of the covenant of good faith and fair dealing and promissory estoppel as bases for the tort of wrongful foreclosure, rather than separate causes of action. Because these claims were plead under the umbrella of Plaintiffs-Appellants Wrongful Foreclosure claim, they in turn fail for the same reasons as the wrongful foreclosure claim –namely, because of plaintiffs' undisputed default and inability to tender. Even if they were meant to be claims on their own, plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs-Appellants' claim that Defendant  allegedly breached the Implied Covenant of Good Faith and Fair Dealing (the "Covenant") by allegedly  failing to provide them with a permanent loan modification agreement.[10] Although the law implies a covenant of good faith and fair dealing in every contract, if the plaintiff fails to allege a contract, no

---

[10] *See* Complaint ¶40-47.

implied covenant of good faith and fair dealing exists. <u>Hunter v. CitiMortgage</u>, Inc.,2011 WL 4625973 at *3 (D. Ariz)).  The Covenant requires that neither party to an agreement  "do anything that prevents the other party from receiving the benefits of their agreement."[11] **Here, the only relevant agreement between defendant and the  Plaintiffs-Appellants is the Loan and Deed of Trust executed by Plaintiffs-Appellants**.  Plaintiffs-Appellants fail to show how defendant breached the Implied Covenant of Good Faith and Fair Dealing with respect to the Deed of Trust. Further, in the Deed of Trust, which was agreed to and signed by Plaintiffs-Appellants, the "borrower [Plaintiffs-Appellants] irrevocably grants and conveys to Trustee, in trust, the power of sale."[12] Therefore, defendants had the right and authority to conduct the foreclosure sale pursuant to the only applicable contract. Furthermore, it was Plaintiffs-Appellants who defaulted on the loan and breached their obligations.  At no point did defendants force Plaintiffs-Appellants to seek a loan modification, nor did defendants refuse to accept payments from Plaintiffs-Appellants until after Plaintiffs-Appellants breached. In fact, Plaintiffs-Appellants admit that their breach was the result of Plaintiffs-Appellants facing "difficult financial times"[13] and not by some conduct of defendant preventing their performance in any way.

---

[11] *Id.*
[12] *See* Deed of Trust, RJN, **Exhibit "1,"** Page 3.
[13] *See* Complaint ¶19-20, 28.

55

Additionally, as described above, Plaintiffs-Appellants have not sufficiently pled that a valid and enforceable contract to negotiate in good faith existed. Without alleging a contract, the implied warranty of good faith and fair dealing does not attach. Accordingly, this claim was also properly dismissed without leave to amend.

**9.    Plaintiffs-Appellants' Claim for Relief for Promissory Estoppel Fails to State a Claim Upon Which Relief can be Granted.**

Plaintiffs-Appellants also allege that defendant is liable for promissory estoppel.   To state a cause of action for promissory estoppel, Plaintiffs-Appellants must show (1) a promise made by defendants; (2) upon which Plaintiffs **justifiably** relied; (3) that caused Plaintiffs to incur loss; and (4) that such reliance was reasonably foreseeable to defendants.[14]  Promissory estoppel is defined as "[a] promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Chewning v. Palmer, 133 Ariz. 136, 138, 650 P.2d 438 (1982). Here, Plaintiffs-Appellants' promissory estoppel claim fails for the same reasons as discussed above, as they cannot show that they justifiably relied

---

[14] *Contempo Constr. Co. v. Mountain States*, 153 Ariz. 279, 736 P.2d 13 (1987); *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970) (explaining that Plaintiff's reliance must be justified).

on a promise made by Defendant. **It was Plaintiffs-Appellants that defaulted under their loan due to difficulties in meeting their payments – not because of reliance on some promise made by Defendant**.[15] Thus, it is unclear how Plaintiffs-Appellants could have changed their position in detrimental reliance.

Plaintiffs-Appellants appear to claim that defendant induced the Plaintiffs-Appellants into relying on statements which led to the foreclosure of the Property. First, Plaintiffs-Appellants fail to allege any facts of wrongdoing by defendant, let alone any facts to show the "how, when, where, who" elements of a cause of action for promissory estoppel against defendant. Plaintiffs-Appellants fail to allege what was even promised by defendant, rather, Plaintiffs-Appellants simply make vague and conclusory allegations. Further, Plaintiffs-Appellants again conveniently fail to mention that they were undisputedly in default of their loan, since December 2010[16], that the Notice of Trustee's Sale was recorded on In May 2011, and the Trustee's Sale didn't actually occur until July 2011. Plaintiffs-Appellants were in default of their loan for nearly a seven months negotiating a modification prior to the foreclosure of the Property.[17]

The fact remains, Plaintiffs-Appellants were fully aware of the consequences of defaulting on their loan.  As discussed above, Plaintiffs-Appellants signed the

---

[15] *See* Complaint ¶19-20, 28.
[16] *See* Complaint ¶19-20, 28
[17] *See* Complaint ¶21

Deed of Trust and by virtue of the terms of the Deed of Trust and the power of sale provision, Plaintiffs-Appellants were fully aware that defaulting on their loan could result in foreclosure. Additionally, Plaintiffs-Appellants had been working with defendants for months to negotiate a loan modification, and were clearly familiar enough with the process to understand that their undisputed default could result in foreclosure. Not only did Plaintiffs-Appellants default, but Plaintiffs-Appellants continued to refrain from making payments on their loan even after foreclosure had commenced with the recording of the Notice of Trustee's Sale. As such, it is unclear how Plaintiffs-Appellants could have "justifiably relied"[18] on any alleged statements by defendant. It is simply unjustifiable for Plaintiffs-Appellants to believe that nonpayment on a loan for nearly a year would not eventually result in foreclosure. Plaintiffs-Appellants' reliance therefore is unjustifiable and insufficient to give rise to a promissory estoppel claim. Therefore, Plaintiffs-Appellants' claim of Relief for Promissory Estoppel was properly dismissed.

---

[18] *Contempo Constr. Co. v. Mountain States*, 153 Ariz. 279, 736 P.2d 13 (1987); *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970) (explaining that Plaintiff's reliance must be justified).

## CONCLUSION.

Plaintiffs-Appellants have not met their burden in establishing that the District Court did not act properly in Granting Fannie Mae and OneWest's Motions to Dismiss for Plaintiffs-Appellants' failure to allege a cognizable claim, and for failure to allege sufficient facts in support of their purported claims. Moreover, Plaintiffs-Appellants' have failed to establish or even allege that they were not in default under their loan at the time of the foreclosure. In order to survive a motion to dismiss for failure to state a claim, a complaint must set forth enough facts to state a claim for relief that is plausible on its face. The First Amended Complaint constitutes nothing more, at best, than the bare, formulaic recitation of some (but not all) of the elements of various claims, lacking in sufficient and specific facts against OneWest and Fannie Mae. Plaintiffs-Appellants do not dispute that they defaulted under their loan and they are simply seeking judicial review over the nonjudicial foreclosure process they agreed to when taking their loan. Plaintiffs-Appellants knew at least two months in advance that their modification was denied, and failed to obtain a court-ordered injunction or cure their default. As a result, all of Plaintiffs-Appellants' claims are statutorily barred by A.R.S. 33-811.

In short, Plaintiffs-Appellants' action was filed in an unjustified and continuing effort to interfere with a valid foreclosure sale. Because this Appeal is

based on universally rejected arguments challenging the foreclosure process, warrantless accusations, and false interpretations of Arizona law, it lacks merit and this Court should affirm the District Court's Judgment and Ruling.

In conclusion, Fannie Mae and OneWest ask this Court to affirm the District Court's Judgment in favor of Fannie Mae and OneWest.

**RESPECTFULLY SUBMITTED** this 28th day of September 2012.

**WRIGHT, FINLAY & ZAK, LLP**

By:    */s/ Bradford E. Klein, Esq.*
Bradford E. Klein, Esq.
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Telephone: 949-477-5050
Facsimile: 949-477-9200
Attorneys for Defendants-Defendants-
Appellees, ONEWEST BANK, F.S.B and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellees State that they agree with Appellants' Statement of Related cases as to the pending Appeal with respect to the forcible detainer action.

**WRIGHT, FINLAY & ZAK, LLP**

Dated: September 28, 2012     By:     */s/ Bradford E. Klein, Esq.*
Bradford E. Klein, Esq.
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Telephone: 949-477-5050
Facsimile: 949-477-9200
Attorneys for Defendants-Defendants-
Appellees, ONEWEST BANK, F.S.B and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

61

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I hereby certify that the attached Answering Brief is proportionally spaced, has a typeface of 14 point in Times New Roman font, and contains 13,689 words as counted by the Microsoft Word Version 10 Word Processing Program used to generate the Brief.  This Brief complies with the type-volume limitation of Fed.R.App.P 32(a)(7)(B) because it contains no more than 14,000 words, excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

**WRIGHT, FINLAY & ZAK, LLP**

Dated: September 28, 2012     By:     */s/ Bradford E. Klein, Esq.*
                                     Bradford E. Klein, Esq.
                                     4665 MacArthur Court, Suite 280
                                     Newport Beach, CA 92660
                                     Telephone: 949-477-5050
                                     Facsimile: 949-477-9200
                                     Attorneys for Defendants-Defendants-
                                     Appellees, ONEWEST BANK, F.S.B and
                                     FEDERAL NATIONAL MORTGAGE
                                     ASSOCIATION

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court

for the United States Court of Appeals for the ninth Circuit by using the Appellate

CM/ECF system on September 28, 2012.  Participants in the case who are

registered CM/ECF users will be served by the Appellate CM/ECF system.

Craig Peter Cherney, Esq.
Laura Jane Edwards, Esq.
Edwards & Cherney, LLP
14300 N. Northsight Blvd., Suite 129
Scottsdale, AZ 85260
Attorneys for Plaintiffs-Appellants,
Anthony Adrian and Maria M. Adrian

William F. Hyder, Esq.
William F. Hyder, PC
7301 N. 16th St., Suite 103
Phoenix, AZ 85020
Attorney for Defendant-Appellee,
MTC Financial Inc.

Richard Joseph Reynolds, Esq.
Turner Reynolds Greco & O'Hara
16485 Laguna Canyon Rd., Suite 250
Irvine, CA 92618
Attorney for Defendant-Appellee,
MTC Financial Inc.

By: /s/ Matthew Tran